QUAYLE & SONS v. BRANDOW PRINTING CO.

(Supreme Court, Appellate Division, Third Department. November 14, 1906.)

1. CONTRACTS—COMPENSATION—ACTIONS—EVIDENCE.

In an action for compensation for public printing, turned over by defendant to plaintiff, alleged to have been done without any contract as to price or terms of payment, evidence examined, and *held* to show existence of arrangement as to plaintiff's compensation and time of payment.

2. SAME—PREMATURE COMMENCEMENT OF ACTION.

Where plaintiff's right of compensation for work turned over to him by defendant, who held certain state printing contracts, did not accrue until after defendant was paid therefor by the state, an action commenced after certain of the items were paid, and before payment of the others, was premature as to the items not paid, and recovery could

not be had thereunder as to such items, though defendant received payment therefor after the commencement of the action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 1585.]

**3. COUNTERCLAIM—CLAIMS ARISING AFTER COMMENCEMENT OF ACTION.**

In an action for compensation for public printing, counterclaims, which did not show that the claims existed at the commencement of the action, were faulty.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Set-Off and Counterclaim, § 73.]

**4. SET-OFF—TORT AGAINST CONTRACT.**

An action for compensation for public printing being an action in contract, a cause of action in tort cannot be set off therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Set-Off and Counterclaim, § 32.]

Kellogg, J., dissenting.

Appeal from Albany County Court.

Action by Quayle & Sons against the Brandow Printing Company for compensation for public printing. From a judgment affirming a judgment of the City Court of Albany for plaintiff, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Montignani & Elmendorf (John F. Montignani, of counsel), for appellant.

Rosendale & Hessberg (Murray Downs, of counsel), for respondent.

SMITH, J. The plaintiff and defendant are both domestic corporations. Prior to December, 1905, the plaintiff's incorporators were doing work as a copartnership under the name of Quayle & Sons. Plaintiff obtained title to its cause of action by assignment from this copartnership.

In 1904 the defendant had secured certain contracts with the state for public printing. Part of the work to be performed under those contracts was turned over to Quayle & Sons. Plaintiff has recovered judgment for services in the performance of part of this work. No question is made as to the performance of the work, or as to the value of the services. The claim is first resisted upon the ground that the moneys were not to become due for such services until they were collected by the defendants from the state, and that such moneys had not been collected from the state at the time of the commencement of this action. The defendant also asserts certain counterclaims, and further insists that the accounts in controversy exceeded the sum of $2,000, which fact ousts the City Court of jurisdiction.

Plaintiff claims that this work was done without any contract as to the price to be paid therefor, or as to the terms of payment. Defendant claims, on the contrary, that this work was to be done under an arrangement whereby, after the performance thereof, the bills were to be submitted to the defendant, which was to collect the same forthwith from the state, and, after having retained 15 per cent. of the collection, the remaining 85 per cent. was to be paid over to the plaintiff as its compensation. Upon this question there is some conflict of evi-

dence, and the trial court is presumed to have found with the plaintiff. In our judgment, however, such conclusion is so strongly overborne by the evidence, both oral and documentary, that such conclusion should not stand.

Upon the conceded facts, in 1897, when the defendant had a similar state contract, part of the work was done by Quayle & Sons under a written agreement whereby the defendant was to collect the money from the state and 85 per cent. of such collection was to be paid to Quayle & Sons when received from the state. In 1899 the defendant obtained another contract for public printing, and work was done by Quayle & Sons thereupon under a written agreement precisely similar to that of 1897. From 1902 to 1904 the defendant did not have this contract for the public printing, but the contract was obtained by the Albany Evening Union. In 1904, when the defendant again obtained the contract for public printing, O. A. Quayle, one of the members of the firm, came to the defendant's business office, and had a conversation in reference to the work. The evidence of the defendant's witnesses is to the effect that Quayle asked if they could not do the work under the terms under which work was done under the former contracts, and that Mr. Brandow, the president of the company, stated that those terms were perfectly satisfactory to him. The testimony of Mr. Quayle himself as to that conversation is entirely unsatisfactory. Much of it he fails to remember, and, while at the last he swears that no terms were made, the fact remains that shortly thereafter work was sent by the Brandow Company and done by Quayle & Sons, for part of which this recovery is sought. Mr. Brandow, himself a witness, after stating that he had replied that the terms were satisfactory to him personally, says that nothing definite was stated. However, the sending of the work by Brandow & Co. thereafter to Quayle & Sons, after the proposition made, in view of the former contract relations, would seem to establish beyond a peradventure the understanding of both parties that the work was to be done in accordance with the terms of the former contracts. It is extremely improbable that this work should be turned over by Brandow & Co. to Quayle & Sons without any understanding as to how much was to be charged or how payment was to be made. The natural and reasonable inference, and we may say the irresistible inference, from all the surrounding circumstances, is that both parties understood that the terms of the contract that had formerly existed between the parties were to determine their right of compensation for the work that was then done.

If the determination of this question depended solely upon the evidence of the witnesses, it is possible that this court should affirm the judgment of the court below, based upon the conclusion that no contract was ever made about the compensation or the terms of payment. But the determination of the question does not rest alone upon the evidence of these witnesses as to what occurred in the office of the defendant upon the visit of Mr. Quayle. Subsequent written documents passing between the parties to the contract establish unquestionably the understanding for which the defendant here contends. Upon March 13, 1905, Brandow & Co. were short of moneys, and to assist

them Quayle & Sons gave their note for $750, and upon the giving of this note the following receipt was delivered by Brandow & Co. to Quayle & Sons:

"Received of Quayle & Sons their note, dated March 13, 1905, payable three months after date, for $750, which, when paid, shall be applied on account of commissions and charges for printing, numbering, and binding liquor tax certificates for 1905–6.

"We agree to render bill against the state of New York for said work as soon as memorandum of same is rendered to us by Quayle & Sons, and as soon as paid to us by the state we will pay to Quayle & Sons amount received, less our commissions and charges as above stated, after crediting on said commissions and charges the amount of said note of $750.

"Brandow Printing Company,
"By A. S. Brandow, Pres't."

Again, differences thereafter arose between Brandow & Co. and Quayle & Sons. It was claimed by Quayle & Sons that Brandow & Co. did not turn over 85 per cent., and Mr. Drake and Mr. Hallenbeck, directors of the defendant, met Mr. Quayle, and Mr. Hallenbeck agreed orally that he would see to it that 85 per cent. of the moneys, when collected from the state, should be turned over forthwith to Quayle & Sons, and thereupon Quayle & Sons sent to Brandow & Co. certain bills, which had been withheld for some time, that Brandow & Co. might collect the same from the state. Accompanying those bills, upon September 18, 1905, Quayle & Sons wrote to Mr. Drake the following letter:

"Quayle & Sons.
"Albany, New York, 9—18—05.

"Mr. John Drake, Albany, N. Y.—My Dear Mr. Drake: I am enclosing several bills in accordance with my understanding with yourself and Mr. Hallenbeck, which is that the sum represented by the bills, less 15%, is to be paid to us upon the receipt of said amounts by the Brandow Printing Co. from the state, under the department printing contract. We have transcribed all of the other bills, and was expecting to have them in your hands in another week.

"Our firm would like it very much if Mr. Hallenbeck would recite our understanding in this matter in some simple form, say in the form of a 'gentleman's agreement in writing.' I was very sorry not to have seen you to-day when I called. I went over the matter and explained the facts in connection with the enclosed bills to your Mr. Evory.

"Very truly yours,
"Dic. O. A. Q.                                        Quayle & Sons."

There is considerable evidence of oral admissions of Mr. Quayle to the effect that this work was being done under this contract. The two papers quoted would seem, however, to remove the last vestige of doubt that such was the understanding under which this work was done. So strong was this proof that the plaintiff's attorneys upon the trial offered to and did allow 15 per cent. to the defendant upon the value of the work claimed, which was the price that Brandow & Co. were to receive from the state for said printing. This was not offered for a compromise, and it is clearly confirmatory of the fact, established both by oral and written evidence, that this work was being done under the terms of the old contract.

Plaintiff contends, however, that, assuming this fact to be proven by the concession upon the trial of the 15 per cent., the defendant gets

the benefit of the commissions claimed, and, as it appears in the case that the money has been received by Brandow & Co. from the state, that the judgment is right and should stand.   This is a legal action, and the judgment must depend upon the right of action at the time of its commencement.   It is no answer to say that by reason of the fact that these moneys have been received after the commencement of the action the defendant has not been harmed by the result.   This judgment stands as an adjudication that this work was not done under the terms of the former contract, and it is impossible for us now to tell to what extent such an adjudication may cause injury to the defendant upon other transactions which are not involved in this suit. While the plaintiff did not allege in his complaint that the moneys had been received by Brandow & Co. before the commencement of the action, it appeared in the defendant's proof that part of the moneys for the work sued for under the contract were in fact received before the commencement of the action, to wit, the sum of $172.56 for work furnished the Adjutant General's office and $228.85 for the State Engineer's account.   The claim of $9.20 for lithographing was not paid until December 13th, and the claim of $273.75 for work done in connection with the Lewis and Clark Exposition was not paid until December 19th.   The action was commenced on December 12th.   To the extent that this judgment includes moneys not received by Brandow & Co. prior to the commencement of the action the judgment must be modified.

Defendant's second contention is that the City Court committed error in not allowing proof of the counterclaims alleged in the answer.   Defendants contend that, if proof had been allowed, it would have appeared that the accounts between the parties amounted to more than $2,000, which would have ousted the City Court of jurisdiction.   A careful examination of these counterclaims, however, shows that they are faulty in not alleging that the claims existed at the time of the commencement of the action.   For aught that therein appears, all moneys claimed to have been due thereunder may have become due after the commencement of the action and prior to the verification of the answer.   As to the cause of action assumed to be alleged in paragraph 10, it may also be answered that the cause of action sought therein to be alleged is one in tort, which could not be offset against a cause of action in contract, upon which the plaintiff seeks to recover.

Judgment reversed, and new trial granted, with costs to appellant to abide the event, unless plaintiff stipulates to reduce the judgment, so as to include 85 per cent. of the amounts received by the defendant from the state prior to the commencement of the action.   If plaintiff so stipulates, judgment may be so modified, and, as modified, affirmed, without costs to either party.   New trial ordered at a time to be designated by Justice CHESTER, by whom the form of this decision may be settled on two days' notice.   All concur, except KELLOGG, J., dissenting in memorandum.

JOHN M. KELLOGG, J. (dissenting).   When objected to at the trial, a pleading should be liberally construed, with a view of doing substantial justice between the parties.   So construed, I think the ninth answer sufficiently foreshadowed a counterclaim.